**Chad Lee LESTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–02–00161–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Oct. 15, 2003.

Decided Nov. 5, 2003.

---

**3.** Atwood has not challenged that trial court finding.

David Hamilton, Paris, for appellant.

Mark Burtner, County Atty., Cynthia L. Braddy, Asst. County Atty., Paris, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION

Opinion by Justice ROSS.

Chad Lee Lester was convicted by a jury of criminal mischief.[1] The court assessed punishment at two years' confinement in a state jail facility, suspended the imposition of sentence, and placed Lester on community supervision for five years. Lester appeals, alleging the trial court erred by: 1) excluding the testimony of a witness called by Lester; 2) failing to grant a mistrial when the State commented on the absence of the excluded testimony and failing to grant a new trial based on such comment; 3) failing to grant a mistrial when the jury sent a note stating it was deadlocked; 4) giving an "Al-

len"[2] charge to the jury; and 5) failing to grant a new trial because of jury misconduct. Because we sustain Lester's first alleged error, and find such error harmful, it is unnecessary to discuss his other contentions.

The primary issue at trial was whether Lester or another individual, Jeffrey O'Neal, had caused damage to several cars at the Chevrolet dealership in Paris, Texas. The evidence showed that, on the evening of June 25, 2001, Lester, O'Neal, Michael Brian Smith, Woody Watson, and two others were riding around Paris, drinking beer, in a van driven by Lester. The van ran out of gasoline late at night. Lester, O'Neal, Smith, and Watson started walking toward the place where O'Neal's vehicle was parked, while the other two remained with the stalled van. O'Neal, Watson, and Smith testified that, during this walk, Lester made a detour to the Chevrolet dealership where he ran across the hoods of nine cars parked on the lot. Lester testified that he did walk to the dealership to look at a truck he intended to buy, but that it was O'Neal who ran across the hoods of the cars.

In addition to his own testimony, Lester sought to introduce the testimony of Ricky Massey, O'Neal's former stepfather, concerning a conversation Massey allegedly overheard between O'Neal and O'Neal's mother, Juanita McDowell. The State objected on the ground of hearsay, and the trial court sustained the objection. On Lester's bill of exception, Massey testified that he overheard O'Neal relate the incident to his mother and that O'Neal confessed to causing the damage at the car dealership. Massey's testimony in relevant part was as follows:

---

1. A violation of Tex. Pen.Code Ann. § 28.03(b)(4)(A) (Vernon Supp.2004).

2. *Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

Q. ... back on June 5th of 2001 you were married to Juanita ... ?

....

A. Yes, sir.

Q. That is Jeffrey O'Neal's mother?

A. Yes, sir, mother.

Q. So on June 25th of 2001 you were Jeffrey O'Neal's stepfather?

A. Yes, sir.

....

Q. ... you were present in the home and overheard a conversation between Jeffrey and his mother. Is that right?

A. That's right.

....

Q. What were these two people talking about?

A. They were talking about—he come in and told Juanita that he had done something that he needed to tell her about,.... He was telling he had went out there at Lowry Chevrolet. He was drunk. He said, Mama, I was drunk. I got up there, and I acted stupid jumping up around on top of these cars.

Lester offered O'Neal's out-of-court statement to his mother as a statement against penal interest. The State objected on the grounds of hearsay and reliability. The trial court sustained the objection.

Lester contends on appeal that Massey's testimony was admissible as an exception to the hearsay rule pursuant to Tex.R. Evid. 803(24) and that the trial court therefore erred in excluding this evidence. Rule 803 provides in relevant part as follows:

The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:

(24) **Statement Against Interest.** A statement which was at the time of its making so far ... tended to subject the declarant to ... criminal liability ... that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The standard for appellate review of a trial court's decision to exclude a hearsay statement under Rule 803(24) is whether the trial court abused its discretion. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim.App.1994). The trial court's ruling will not be reversed as long as it is within the "zone of reasonable disagreement." *Salazar v. State*, 38 S.W.3d 141, 151 (Tex.Crim.App.2001); *Couchman v. State*, 3 S.W.3d 155, 158 (Tex.App.-Fort Worth 1999, pet. ref'd).

The language of the rule does not limit the exception to cases where the defendant is the declarant. *See Bingham v. State*, 987 S.W.2d 54, 56 (Tex.Crim.App. 1999); *Sarver v. State*, 24 S.W.3d 448, 454 (Tex.App.-Texarkana 2000, pet. ref'd). The determination regarding the admissibility of a statement in accordance with Rule 803(24) requires a two-step inquiry. First, the trial court must determine whether the statement in question tends to expose the declarant to criminal liability. *Bingham*, 987 S.W.2d at 57 (citing *Williamson v. United States*, 512 U.S. 594, 599–601, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994); *Cofield v. State*, 891 S.W.2d 952, 956 (Tex.Crim.App.1994)). Second, the trial court must determine if there are corroborating circumstances that clearly indicate the trustworthiness of the statement. Tex.R. Evid. 803(24). If both these criteria are met, then Rule 803(24) is satisfied.

The first inquiry under the pertinent portion of Rule 803(24) is whether the statement tended to expose the declarant

to criminal liability. The State concedes that, in making the statement at issue here, O'Neal implicated himself in a crime, rendering himself a potential target for prosecution.

■ We now turn to the existence of corroborating circumstances. The structure of the rule and its wording demonstrate the obvious suspicion with which the drafters of the rule regarded a statement exposing the declarant to criminal liability, but exculpating the accused. The requirement of corroboration is therefore construed in such a manner as to effectuate its purpose of circumventing fabrication. *See Cunningham*, 877 S.W.2d at 313–14. The Texas Court of Criminal Appeals concluded that no definitive test exists by which to gauge the existence of corroborating circumstances for purposes of Rule 803(24). *Davis v. State*, 872 S.W.2d 743, 749 (Tex.Crim.App.1994). Any number of factors may be considered in this inquiry, including: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant, (2) whether the declarant was so situated that he or she might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement was made, and (6) the existence of independent corroborating facts. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex.Crim. App.1999); *see also Davis*, 872 S.W.2d at 749. Further, evidence which undermines the reliability of the statement as well as evidence corroborating its trustworthiness may be considered, so long as the court is careful not to engage in a weighing of the credibility of the in-court witness. *Davis*, 872 S.W.2d at 749. The burden lies with the party seeking to admit the statement, and the test is not an easy one; the evidence of corroborating circumstances must clearly indicate trustworthiness. *Id.*

We find that the factors enumerated above, including the corroborating circumstances, clearly point to the trustworthiness of Massey's testimony.

■ The first factor weighs in favor of trustworthiness. O'Neal's confession of guilt is inconsistent with the guilt of Lester. *See Ramirez v. State*, 543 S.W.2d 631, 632 (Tex.Crim.App.1976) (finding common-law statement of rule required that guilt of declarant confessing to crime had to be inconsistent with guilt of accused); *see also Davis*, 872 S.W.2d at 749 (adopting that part of common-law rule in list of its relevant factors of trustworthiness). The testimony from the investigating officers at trial was that the shoe prints on all the cars matched and that one individual committed the crime. Therefore, O'Neal's confession of guilt was inconsistent with the guilt of anyone else, including Lester's.

The second factor also weighs in favor of trustworthiness. The testimony at trial was undisputed that O'Neal was one of the individuals who was present at the car dealership at the time of this occurrence, and he was therefore clearly situated to commit the crime.

The third and fourth factors neither weigh for nor against the statement's trustworthiness. The timing of O'Neal's statement was between one and two weeks after the incident, and there is no evidence in the record as to its spontaneity.

The fifth factor clearly weighs in favor of its trustworthiness. O'Neal made the statement to his mother, and he conceded at trial he talks to his mother "about everything." Courts typically hold that a statement is sufficiently trustworthy for purposes of Rule 803(24) when the statement is made to a relative. *See White v. State*, 982 S.W.2d 642, 648 (Tex.App.-Texarkana 1998, pet. ref'd). In *Cantu v. State*, 939 S.W.2d 627, 635 (Tex.Crim.App.

1997), the Texas Court of Criminal Appeals found statements made to a brother and sister-in-law were made to people the speaker would reasonably feel he could confide in, and therefore the speaker had no motivation to lie or place the blame for the crime on someone else.

There is also independent evidence of the statement's trustworthiness. In the alleged statement, O'Neal states he was drunk during the incident. The evidence in the record is that the four individuals involved had been drinking while riding around town in the van. Also, in Lester's testimony he corroborated O'Neal's confession when he testified that O'Neal was the party responsible for the damage to the vehicles, not him. *See Cunningham*, 877 S.W.2d at 313 n. 2 (finding testimony from defendant valid consideration in assessing trustworthiness). The most substantial evidence of corroboration, however, came from O'Neal himself when he testified that, in fact, there was a conversation between he and his mother where he told her about the incident at the car dealership. Even though he denied at trial he told his mother he was the one who committed the crime, his testimony that he had a conversation with his mother about the incident corroborates Massey's testimony that such a conversation took place. In addition, O'Neal testified this conversation occurred before he was questioned by Stephen Holmes, one of the investigating officers. Massey also testified in the bill of exception that the statement he overheard occurred a few days before Holmes came to the house to question O'Neal.

 The factors which tend to show the untrustworthiness of the statement, i.e., the testimony of Watson, Smith, and O'Neal that Lester was the guilty party, do not outweigh the corroborating circumstances. The State also points out that, since the time Massey overheard the alleged conversation between O'Neal and his mother, Massey divorced O'Neal's mother and was, at the time of trial, living with Lester's mother-in-law. However, any motive on the part of Massey to lie in an effort to get back at his former wife and stepson is not a valid consideration in determining the trustworthiness of the statement, but is a matter to be tested before the jury on cross-examination. *See Davis*, 872 S.W.2d at 749.

Under similar circumstances, courts have held it was error to exclude statements against penal interest tending to exonerate a defendant. *See Burks v. State*, 876 S.W.2d 877, 905 (Tex.Crim.App. 1994); *Davis*, 872 S.W.2d at 749 (holding factors that might undermine reliability did not outweigh evidence directly corroborating statement); *James v. State*, 102 S.W.3d 162, 178–79 (Tex.App.-Fort Worth 2003, pet. ref'd); *Fonseca v. State*, 908 S.W.2d 519, 523 (Tex.App.-San Antonio 1995, no pet.). Considering the factors discussed above, we find the corroborating evidence, even in light of evidence tending to undermine the reliability of Massey's statement, is sufficiently convincing to clearly indicate its trustworthiness. Massey's statement that O'Neal confessed his guilt to his mother is sufficiently corroborated that, if believed, it could create a reasonable doubt as to Lester's guilt. O'Neal directly refutes he admitted his guilt to his mother in their conversation, but whether Massey or O'Neal is to be believed is ultimately for the jury. The trial court's ruling excluding Massey's statement was outside the zone of reasonable disagreement and was an abuse of discretion.

Where erroneous exclusion of evidence is the result of misapplication of the Rules of Evidence and its admission is not claimed to be required by the United States or state constitutions, we analyze

harm under Rule of Evidence 103(a), which provides that error may not be predicated on a ruling that admits or excludes evidence unless a "substantial right" of the party is affected. TEX.R. EVID. 103(a); *Potier v. State,* 68 S.W.3d 657, 666 (Tex.Crim.App.2002). The standard is the same as that under Rule 44.2(b). TEX.R.APP. P. 44.2(b); *Potier,* 68 S.W.3d at 666. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App.2001).

 In assessing the likelihood the error adversely affected the jury's decision, we consider everything in the record, including all evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might have been considered in connection with the other evidence. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000). We may also consider the state's theory of the case, any defensive theories, closing arguments, and voir dire. *Id.*

The issue of who actually ran across the hoods of the cars was the critical issue in the case. The defense theory was that O'Neal was the guilty party and that the other witnesses had conspired with O'Neal to blame Lester. The defense brought evidence that O'Neal and Watson had opportunity to conspire and that O'Neal's shoes, not Lester's, were the proper size to leave the imprints on the cars. However, guilt was substantially dependent on the jury's determination of Lester's credibility, and the jury had only his uncorroborated testimony, absent Massey's statement that O'Neal had admitted guilt. In view of the evidence from the investigating officers that only one individual committed the crime, we cannot say the exclusion of Massey's testimony did not have a substantial and injurious effect or influence on the jury's verdict. The error in excluding such evidence was therefore harmful. The harm was compounded by the State's closing argument referring to Lester's inability to present a witness to corroborate his testimony that O'Neal committed the offense. The injurious effect the trial court's ruling had on the jury can be further seen from the note the jury sent to the judge inquiring about the missing testimony.

The exclusion of Massey's testimony prevented Lester from adequately supporting his defense, and the ruling substantially and injuriously affected the jury's verdict. We therefore sustain Lester's first point of error.

We reverse the judgment and remand the case to the trial court for further proceedings.