Affirmed
and Memorandum Opinion filed September 1, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00028-CR

____________

 

EZEKIEL HARRELL, III, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 1111755

 



 

M E M O R A N D U M   O P I N I O N

Appellant Ezekiel Harrell, III was
convicted of murder and sentenced to life imprisonment.  In two issues,
appellant contends that the trial court erred by (1) excluding hearsay
testimony regarding an alternative suspect=s statement and
(2) instructing the jury on the meaning of Aproof beyond a
reasonable doubt@ during voir dire.  We affirm.

I.  Background








Earnest Johnson, Jr. went to bed around
10:30 one night in August 2006, leaving his cousin, James Willie Harris, awake
on the couch.  A gunshot woke Johnson up around 11:30B11:45 p.m. 
Johnson remained in bed for approximately five minutes before he went into the
den and saw Harris bleeding on the couch.  Johnson ran to the front door and
saw a man in a camouflage hat and clothes leaving his yard.  When the man went
through the gate and turned towards a light, Johnson saw the side of his face. 
Johnson called the police.

Later that morning, a neighbor who had
seen appellant wearing a camouflage outfit in the neighborhood on the day of
the murder led police to appellant and his girlfriend, Linda Gomez.  Police
found the couple checking out of a neighborhood hotel.  Appellant consented to
a search of the couple=s room, where the police found a pistol. 
Forensics later confirmed that the bullet that killed Harris came from the
pistol recovered by the police.  Later that day, Johnson viewed a lineup and
identified appellant as the man he saw leaving the yard just after the murder. 
Additionally, appellant was wearing camouflage pants when taken into custody,
and police found a camouflage shirt and hat in his hotel room.  Testimony at
trial showed that appellant was seen wearing a camouflage outfit shortly after
the murder and always wore camouflage unless he was working.

Lewis Butler testified that appellant
called him a few hours after the murder and asked him for a ride to get some
food.  Butler gave appellant the ride and later went back to appellant=s room so that
Gomez could pay him for it.  There he saw Anthony White, a neighborhood
resident.  During the defense=s case‑in‑chief, appellant
attempted to offer evidence of a hearsay statement White allegedly made to
Gomez; an affidavit made by White in jail in which he states that he is Aresponsible for
the actions that lead [sic] to [Harris=s] death@ and that
appellant is innocent; and hearsay testimony from Bob Loper, appellant=s former defense
attorney, that White admitted Aholding the gun when it went off.@








The trial court held a hearing on the
admissibility of this evidence.  During the hearing, defense counsel pointed
out Loper=s motion to withdraw, which was in the clerk=s record at the
time of the trial court=s ruling.  The motion stated that White
had recanted the admission and had claimed that he was forced to sign the
affidavit.  The trial court ruled that Gomez=s hearsay
testimony regarding White=s statement was inadmissible, but admitted
White=s affidavit and
Loper=s hearsay
testimony.  In rebuttal, the State offered evidence that appellant and White
were in cell blocks next to each other.  Officer Todd Miller, who investigated
Harris=s death, testified
that after White filled out the affidavit and spoke with Loper, White claimed
that appellant had beaten and threatened him into making the inculpatory
affidavit.  The jury also heard a recording of a phone call appellant made from
jail, in which he states to the person he is calling that AI said man, take
the case, man.  I ain=t [sic] whooped [him] or nothing.  I just
really prayed on him, man, I said man, look here, man, I did it for you, man
. . . don=t let me go down for this here, man.@  (emphasis
added).  The jury convicted appellant, and this appeal followed.

II.  Exclusion of Gomez=s Hearsay
Testimony

In his second issue, appellant contends
that the trial court erred in excluding Gomez=s hearsay
testimony.  Specifically, appellant contends that the trial court=s exclusion of
Gomez=s testimony
deprived appellant of the right to put on a complete defense as recognized in Holmes
v. South Carolina, 547 U.S. 319 (2006), or, alternatively, that White=s statement was
admissible through Gomez=s hearsay testimony as a statement against
interest under Texas Rule of Evidence 803(24).

In the hearing on the admissibility of the
evidence, Gomez testified that White came to appellant=s and Gomez=s hotel room just
after 10:00 on the night of the murder.  She stated White borrowed the pistol
used to kill Harris, and returned with it after midnight.  The trial court
admitted this portion of her testimony and also allowed her to testify that
White was dazed when he returned.  However, the trial court found the following
hearsay testimony inadmissible:

[Defense Counsel]: When [White]
came back with the gun, did he say anything to you about what he had done with
it?

[Gomez]: Yes, sir.

[Defense Counsel]: What did he tell
you about what he had done with it?








[Gomez]: He told me that he hopes
Mr. Harris ain=t dead.

[Defense Counsel]: Did he say
anything else about the circumstances around what happened to Mr. Harris?

[Gomez]: No, he told me that he
didn=t know there was a bullet in the
chamber.

[Defense Counsel]:Of the gun?

[Gomez]: Yes, sir.

[Defense Counsel]: He indicated to
you that it was an accident, basically?

[Gomez]: Yes, sir.  

[Defense Counsel]: Did he say
anything else to you about what he had done with the gun or what had happened
that night?

[Gomez]: No, he just basically laid
on the bed, and he said that he didn=t know that there was a bullet in the chamber, and that he
hopes Mr. Harris ain=t dead, and that can I take him out
of town.

[Defense Counsel]: Can who take him
out of town?

[Gomez]: Me and Zek.

[Defense Counsel]: Mr. White
indicated to you that he wanted to get out of Houston?

[Gomez]: Yes, sir.

The trial court determined that White=s alleged
statement to Gomez appeared untrustworthy for Aseveral reasons,@ specifically
noting that the trial court was aware that White had witnesses who would state
he was somewhere else at the time of the murder.  The actual testimony in that
regard does not appear in the record until after the trial court=s ruling.  It
consists of White=s grandmother=s testimony that
she made sure White did not go anywhere that evening because he was
intoxicated, but that he was awakened by a call from Gomez between midnight and
1:00 a.m. and left one or two hours later.

A.  Admissibility of Gomez=s Testimony under
Rule of Evidence 803(24)








Appellant contends that White=s statement was
admissible through Gomez=s hearsay testimony as a statement against
interest under Texas Rule of Evidence 803(24).  We review a trial court=s exclusion of
hearsay testimony under Rule 803(24) for an abuse of discretion.  Bingham v.
State, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999).  Under that standard, we
will not reverse the trial court=s ruling if it is
within the zone of reasonable disagreement.  Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003).  In our review, we consider only what
was before the trial court at the time of its ruling because the ruling was
based on it rather than what was introduced later.  See Rachal v. State,
917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

Determining the admissibility of a hearsay
statement under Rule 803(24) requires a two‑step inquiry.  Bingham,
987 S.W.2d at 57.  First, the trial court must determine whether the statement
in question tends to expose the declarant to criminal liability.  Id. 
The State concedes the satisfaction of that prong here.  Second, the trial
court must determine if there are corroborating circumstances that clearly
indicate the statement=s trustworthiness.  Id.  The focus
of this inquiry should be on verifying the statement=s trustworthiness
so as to avoid the admissibility of a fabrication.  Id. at 58.  When
conducting this inquiry, any number of factors may be considered, including
whether the declarant=s guilt is inconsistent with the accused=s guilt, whether
the declarant was so situated that he might have committed the crime, the
declaration=s timing and spontaneity, the relationship between the
declarant and the party to whom the declaration was made, and the existence of
independent corroborating facts.  Davis v. State, 872 S.W.2d 743, 749
(Tex. Crim. App. 1994).  Further, evidence that undermines the reliability of
the statement as well as evidence corroborating its trustworthiness may be
considered, so long as the court is careful not to engage in a weighing of the
credibility of the in-court witness.  Id.  The burden lies with the
party seeking to admit the statement, and the test is not an easy one: the
evidence of corroborating circumstances must clearly indicate
trustworthiness.  Id. (emphasis in original).








Here, appellant argues that White=s statement to
Gomez was reliable because it was made soon after the murder and because his
statement that it was an Aaccident@ was consistent
with the firearms examiner=s testimony that the grip safety on the
murder weapon did not have to be depressed to fire it.  However, consideration
of the other Davis factors shows that the trial court did not abuse its
discretion in ruling Gomez=s hearsay testimony inadmissible under
Rule 803(24).

For instance, appellant did not
demonstrate that White=s guilt is inconsistent with his guilt.  See
id.; Lester v. State, 120 S.W.3d 897, 901 (Tex. App.CTexarkana 2003, no
pet.).  Johnson identified appellant as the person leaving his yard just after
the murder.  It is unclear from White=s statement to Gomez
whether he was admitting to being the shooter.  Therefore, in light of Johnson=s testimony, Gomez=s hearsay
testimony did not rule out the possibility that appellant was actually the
shooter and that White was merely inculpating himself as a party.  The trial
court was also confronted with White=s inculpatory
affidavit and Loper=s testimony that White admitted being the
shooter.  Although this evidence, by itself, supports a finding that White=s guilt was
inconsistent with appellant=s, there was evidence before the trial
court that White subsequently recanted that admission and claimed he was forced
to sign the affidavit.  Therefore, the trial court could have disregarded those
later statements and determined that White=s statements to
Gomez did not render his guilt inconsistent with appellant=s guilt because
White could have merely been implicating himself as a party.  Cf. Lester,
120 S.W.3d at 901 (evidence showed that if declarant=s confession to
his mother were believed, he, and not anyone else, committed the charged
offense).  Likewise, in making its ruling, the trial court noted that White had
witnesses placing him somewhere else at the time of the shooting, suggesting
that White was not so situated that he might have committed the crime.  Davis,
872 S.W.2d at 749; Lester, 120 S.W.3d at 901.  Therefore, this factor
also weighs in favor of the trial court=s ruling.








Though the declaration=s timing weighs in
favor of its trustworthiness, the trial court could reasonably have questioned
its spontaneity.  The evidence that appellant was at the scene of the murder and
the statement in Loper=s motion to withdraw that appellant
recanted his statement and was forced to sign the affidavit left open the
possibility that appellant may also have coerced White to make the statements
to Gomez before White returned to the hotel room.

The relationship between White and Gomez
allows conflicting inferences as to the trustworthiness of his statement.  This
factor weighs against the statement=s trustworthiness
where the declarant had a motive to lie or shift blame at the time the
statement is made.  See Woods v. State, 152 S.W.3d 105, 113 (Tex. Crim.
App. 2004) (finding statement trustworthy where declarant made it to friends
without any motive to shift blame or minimize involvement); Lester, 120
S.W.3d at 901B02 (finding declarant=s statement
trustworthy where it was made to his mother, to whom he talked about Aeverything,@ which showed that
declarant had no motive to lie or shift blame).  On one hand, White had a
reason to confide in Gomez given that he allegedly borrowed the gun from her a
few hours before making the statement.  On the other hand, if appellant was the
shooter and White was merely a party, White may have had a motive to leave his
statement to Gomez ambiguous as to who the shooter was to avoid upsetting her
with the news that her longtime boyfriend had just shot someone.  Indeed,
Johnson=s identification
of appellant and the ambiguity in White=s statement to
Gomez as to whether White was implicating himself as a party or as the shooter
left open the possibility that White made the statement with such a motive. 
Moreover, given the evidence that appellant was at the scene and Loper=s statement that
White claimed to have been coerced to make inculpatory statements in jail, the
trial court could have reasonably suspected that White=s statements to
Gomez immediately after the shooting were also the product of intimidation. 
Therefore, under either rationale, the trial court was entitled to rely on the
possibility that White had a motive to lie in finding his statement
untrustworthy and ruling Gomez=s testimony inadmissible.








Finally, although White=s affidavit and
statement to Loper independently corroborate his statement to Gomez, White=s subsequent
recantation and claim of coercion undermined the corroborative nature of those
facts.  Though Butler testified that he saw White in the hotel room several
hours after the murder, his testimony was not inconsistent with the evidence
that White was elsewhere at the time of the murder.  That evidence and Johnson=s identification
of appellant undermine the statement=s reliability. 
Having reviewed the trial court=s decision in light of the Davis factors,
we believe that its ruling that the statement was untrustworthy and therefore
inadmissible was within the zone of reasonable disagreement.  Therefore, we
conclude the trial court did not abuse its discretion.  Manning, 114
S.W.3d at 926.

But even if we assume that the trial court
wrongfully excluded Gomez=s hearsay testimony, that error was
harmless.  Such error would be non‑constitutional in nature as it
involved neither (1) a state evidentiary rule categorically and arbitrarily
prohibiting the defendant from offering relevant evidence that is vital to his
defense nor (2) a trial court=s erroneous exclusion of vital, relevant
evidence that effectively precluded the defendant from presenting a defense.[1] 
See Ray v. State, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005).  We must
disregard non‑constitutional error that does not affect the defendant=s substantial
rights.  Tex. R. App. P. 44.2(b). 
Nonconstitutional error in the exclusion of evidence is harmless if, after
examining the record as a whole, we are fairly assured that the error did not
influence the jury or had but a slight effect.  Ray, 178 S.W.3d at 836. 
In assessing the likelihood that the jury=s decision was
adversely affected by the error, the appellate court should consider everything
in the record, including any testimony or physical evidence admitted for the
jury=s consideration,
the nature of the evidence supporting the verdict, the character of the alleged
error and how it might be considered in connection with other evidence in the
case.  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  The
reviewing court may also consider the jury instructions, the State=s theory and any
defensive theories, closing arguments and even voir dire, if applicable.  Id.
at 355B56.  We have also
recognized that whether the State emphasized the error can be a factor.  Id.
at 356.








Despite the exclusion of White=s statements to
Gomez, appellant was able to present the jury with substantial other evidence
inculpating White.  Gomez testified that White borrowed the gun shortly before
the murder, returned it after the murder, and seemed Adazed@ at that time. 
Butler testified that White was in appellant=s hotel room
several hours after the murder.  White implicated himself and exculpated
appellant in his affidavit, and admitted to Loper that he, and not appellant,
was holding the gun when it went off.  Thus, despite the exclusion of Gomez=s hearsay
testimony, the defense was left with substantial corroborating evidence lending
independent credibility to appellant=s defensive theory
that White was the shooter.  Cf. Ray, 178 S.W.3d at 836 (finding error
harmful where defendant was left with only her own self‑serving testimony
after exclusion of evidence which would have corroborated and given independent
credibility to her defensive theory).  Also, this evidence allowed defense
counsel to argue extensively in closing arguments that White was the actual
shooter.

The verdict was supported by evidence that
(1) appellant coerced White into making the affidavit, (2) White was at his
grandmother=s house at the time of the murder, (3) appellant left
his hotel room shortly before the murder and returned shortly afterwards, (4)
appellant=s gun fired the bullet that killed Harris, and (5)
Johnson identified appellant as the man leaving his yard just after the murder,
but did not see White at the scene.  The jury also heard a recording of
appellant stating that he had told someone to Atake the case,@ and had coaxed
that person to do so by Apraying on him@ and stating AI did it for you.@  Thus, there was
strong circumstantial evidence supporting the jury=s verdict. 
Finally, the State did not emphasize the error.

Having reviewed the record as a whole, we
are fairly assured that any error by the trial court in excluding White=s statements to
Gomez did not influence the jury or had but a slight effect, and was therefore
harmless.  See id.

 








B.  Right to Present a Complete Defense

Appellant also contends that excluding
Gomez=s hearsay
testimony violated his fundamental right to present a complete defense as
articulated in Holmes v. South Carolina, 547 U.S. 319, 324 (2006). 
Appellant has waived this argument on appeal by not first presenting it to the
trial court.  See Tex. R. App. P.
33.1(a); Reyna v. State, 168 S.W.3d 173, 176B79 (Tex. Crim.
App. 2005) (stating that failure to present a particular argument to the trial
court in support of the admission of excluded evidence waives that argument for
appeal); see also Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995) (holding appellant=s failure to argue in the trial court that
he was denied right to present a defense and right to due process or course of
law in violation of federal and state constitutions waived those arguments on
appeal); Ruiz v. State, No. 14-05-00757-CR, 2007 WL 2239289, at *4 (Tex.
App.CHouston [14th
Dist.] Aug. 7, 2007, pet. ref=d) (mem.op., not designated for
publication) (holding that argument under Holmes that defendant was
prevented from presenting complete defense due to exclusion of evidence was
waived through non-preservation).








However, even if appellant had preserved
this argument for our review, it is without merit.  In Holmes, the Court
held that while state and federal rulemakers have broad constitutional latitude
to establish rules excluding evidence from criminal trials, the Constitution
limits that power by guaranteeing criminal defendants a meaningful opportunity
to present a complete defense.  547 U.S. at 324.  However, there is no
constitutional right for a defendant to present all favorable evidence.  Potier
v. State, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002) (citing United
States v. Scheffer, 523 U.S. 303, 316 (1998)).  Holmes prohibits
excluding defense evidence under evidentiary rules that infringe upon a weighty
interest of the accused and are arbitrary or disproportionate to the purposes
they are designed to serve.  Holmes, 547 U.S. at 324 (citing United
States v. Scheffer, 523 U.S. 303, 308 (1998)).  AArbitrary@ rules are those
that exclude important defense evidence but do not serve any legitimate
interests.  Id. at 325.  A rule ensuring that only reliable evidence is
presented at trial serves a legitimate interest and does not unconstitutionally
abridge the right to present a defense.  See United States v. Scheffer,
523 U.S. 303, 309 (1998).

Here, the trial court excluded Gomez=s hearsay
testimony because it found White=s statement
untrustworthy based on the standard articulated in Davis for determining
the trustworthiness of a statement against interest offered under Rule 803(24)
of the Texas Rules of Evidence.  Davis, 872 S.W.2d at 749.  The Davis
inquiry is meant to ensure that only reliable evidence is admitted under
Rule 803(24); its focus is on determining the trustworthiness of such
statements so as to avoid the admissibility of a fabrication.  See Walter v.
State, 267 S.W.3d 883, 891 n.27 (Tex. Crim. App. 2008).  Moreover, the Davis
inquiry calls for a consideration of the evidence that undermines the
reliability of the offered statement as well as evidence corroborating
its trustworthiness, unlike the rule proscribed in Holmes, which called
for a determination of the admissibility of third-party guilt evidence offered
by the defendant by focusing solely on the strength of the inculpatory evidence
against the defendant without also evaluating the strength of the third-party
guilt evidence offered by the defense.  Holmes, 547 U.S. at 329B331; Davis,
872 S.W.2d at 749.  Therefore, neither Rule 803(24) nor the Davis
standard used to determine the admissibility of statements offered under that
rule fall into the category of rules proscribed in Holmes.  See Holmes,
547 U.S. at 324; Scheffer, 523 U.S. at 309.

We overrule appellant=s second issue.

III. Trial Court=s Voir Dire
Comments Regarding Reasonable Doubt

In his first issue, appellant contends
that the trial court erred by instructing the jury on the meaning of Aproof beyond a
reasonable doubt@ during voir dire.  During voir dire, the
trial judge said that reasonable doubt is Awhat [the jurors]
believe it to be,@ and then stated as follows:








Now the Charge will tell you it=s not beyond all possible doubt,
but that=s kind of where it leaves you
hanging.  I can give you some suggestions, you can take them and leave them. 
They are what I have talked to some people that I respect as far as their
opinion of things, but then, again, it=s going to be decided by what you believe it to be.  I=ve heard people tell me that it=s something you know in your
heart.  It=s a decision that you know in your
heart.  I=ve heard other people say it=s a gut feeling.  I know in my gut
that this is true.  I=ve heard other people say that it=s an intellectual exercise based on
logic, common sense, careful consideration of all the evidence.  I will submit
to you folks, it=s probably a combination of all
three.  But ultimately you must decide what you believe it to be.  So I=ve got two questions along this
line: [f]irst, knowing yourself, can you determine what beyond a reasonable
doubt means to you?

Appellant did not object to the trial court=s comments. 
Therefore, he has not preserved this issue for appellate review.  See
Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (finding that
appellant=s failure to object waived complaint about trial court=s explanation of
reasonable doubt given to venire panel as belief in one=s heart and
conscience based upon an evaluation of the evidence).

Appellant also relies on Blue v. State,
41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.), in which a trial judge=s unobjected-to
comments regarding a defendant=s failure to accept a plea bargain tainted
the presumption of innocence and amounted to fundamental error.  Because there
is no majority opinion in Blue, it is not binding precedent. See
Pearson v. State, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App. 1999).  Even if Blue
were binding, it would not affect our analysis.  As Judge Keasler=s concurring
opinion in Blue indicates, the trial court=s remarks in Blue
reasonably could be interpreted as a predetermination of Blue=s guilt, thus
implicating the right to an impartial trial court.  See Blue, 41 S.W.3d
at 135B39 (Keasler, J.,
concurring).  The trial court=s comments in this case are not of that
nature.  Therefore, even if Blue were binding precedent it would not
apply to this case.  See Jasper v. State, 61 S.W.3d 413, 420B21 (Tex. Crim.
App. 2001); Blue, 41 S.W.3d at 129B35.








Finally, appellant argues that voir dire
comments like those at issue here function as jury instructions on the burden
of proof and should be governed by Almanza, which requires the reversal
of cases where unobjected‑to jury charge error results in egregious
harm.  See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984).  However, appellant offers no binding authority to support this
argument.  See Tex. R. App. P.
38.1(h); Zachery v. State, No. 14‑07‑01050‑CR, 2009 WL
136915, at *2 n.2 (Tex. App.CHouston [14th Dist.] Jan. 20, 2009, no
pet.) (mem. op., not designated for publication) (rejecting this argument and
noting that no binding caselaw was cited in support).  We decline to accept
this proposition.  See Robertson v. State, No. 01‑02‑00046‑CR,
2002 WL 31236391, at *3 (Tex. App.CHouston [1st
Dist.] Oct. 3, 2002, no pet.) (not designated for publication) (rejecting this
argument where error was not fundamental error such as that involved in Blue). 
We overrule appellant=s first issue.

Having overruled both of appellant=s issues, we
affirm the trial court=s judgment.

 

 

/s/      Leslie
B. Yates

Justice

 

 

 

 

 

Panel consists of Chief Justice Hedges and Justices Yates and Frost.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  As discussed below, appellant was allowed to present his defense that White was
the actual perpetrator through White=s
affidavit and Loper=s testimony.  See Walters v. State, 247 S.W.3d
204, 221B22 (Tex. Crim. App. 2007).