ACCEPTED
01-14-00954-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/11/2015 2:43:57 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00954-CR
IN THE
COURT OF APPEALS
FOR THE
FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

9/11/2015 2:43:57 PM

CHRISTOPHER A. PRINE
Clerk

---

**RALPH GARCIA**, Appellant
**V.**
**THE STATE OF TEXAS**, Appellee

---

Appealed from the 405TH Judicial District Court
of Galveston County, Texas
Cause No. 12-CR-2430

---

**BRIEF FOR THE STATE OF TEXAS**

---

**JACK ROADY**
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY

**ALLISON LINDBLADE**
ASSISTANT CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY
STATE BAR NO. 24062850
600 59TH STREET, SUITE 1001
GALVESTON, TX 77551
(409) 766-2355, FAX (409) 765-3261
allison.lindblade@co.galveston.tx.us

ORAL ARGUMENT NOT REQUESTED

i

# IDENTITY OF PARTIES AND COUNSEL

Presiding Judge                      Hon. David Garner

Appellant                            Ralph Garcia

Appellee                             The State of Texas

Attorneys for Appellant          Kendrick Ceasar – Trial

                                     Joseph Salhab – Appeal

Attorneys for State              T. Philip Washington – Trial

                                     Allison Lindblade – Appeal

# TABLE OF CONTENTS

Identity of Parties and Counsel ii

Table of Contents iii

Index of Authorities v

Summary of the Argument 1

Statement of Facts 2

Sole Issue 10

      Whether an out-of-court statement is admissible as non-hearsay or as an exception to hearsay is within the trial court's discretion. A trial court's ruling will be upheld if it's reasonably supported by the record and is correct under any theory of law.

      How's the Trial Court's ruling to admit the statement wrong when the record supports admitting it as both as a hearsay exception admission against interest and as a nonhearsay prior consistent statement?

    Argument and Authorities 10

    Standard of Review and applicable law 11

    Hearsay 12

    The Trial Court found the statement was against Alvarez's penal interest after hearing the State's evidence 13

    People don't usually incriminate themselves unless it's true 15

    Alvarez made the blame sharing statement to Garcia's cousin spontaneously without motive to gain favor 17

The Trial Court heard corroborating circumstances in the evidence that indicated Alvarez was being truthful in her statement to Clemente                                                        20

Circumstantial evidence corroborated Alvarez's custodial Statements to the police, Alvarez's testimony, and Garcia's guilt                                                        24

The Trial Court could've admitted the statement as a nonhearsay prior consistent statement                                                        27

Admitting the statement was harmless                                                        30

Conclusion and Prayer                                                        34

Certificate of Service                                                        35

Certificate of Compliance                                                        35

# INDEX OF AUTHORITIES

**CASES**

*Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987) .........................17

*Bingham v. State*, 987 S.W.2d 54, 56 (Tex. Crim. App. 1999). ................. 15, 16, 21

*Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). .................12

*Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ..............................31

*Campos v. State,* 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) .......................................................................................................31

*Cantu v. State,* 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)................................12

*Chaney v. State*, 01-08-00204-CR, 2009 WL 1086952, at *3 (Tex. App.—Houston [1st Dist.] Apr. 23, 2009, no pet.) .........................................................................24

*Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ........................................................................................ 31, 33

*Coffin v. State,* 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). ..............................12

*Coleman v. State*, 428 S.W.3d 151, 162 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).........................................................................................................31

*Cunningham v. State,* 877 S.W.2d 310, 313 (Tex. Crim. App. 1994)......................... ........................................................................................ 11, 14, 15, 20, 21

*Davis v. State,* 872 S.W.2d 743, 748–49 (Tex. Crim. App. 1994) ....... 14, 15, 20, 21

*Eby v. State*, 165 S.W.3d 723, 735 (Tex. App.—San Antonio 2005, pet. ref'd). ........ ........................................................................................ 15, 26

*Foxx v. State*, 1497-00169-CR, 1999 WL 966651, at *1 (Tex. App.—Houston [14th Dist.] Oct. 21, 1999, pet. ref'd)..................................................................17

*Garcia v. State,* 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) ...............................31

*Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007) ...........................
.................................................................................. 11, 12, 27, 28, 29, 30

*Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App.1998) .............................31

*Jones v. State*, 13-00-087-CR, 2001 WL 1000994, at *2 (Tex. App.—Corpus
Christi Mar. 29, 2001, no pet.).................................................................32

*Juarez v. State*, 01-08-00010-CR, 2009 WL 41648, at *3-4 (Tex. App.—Houston
[1st Dist.] Jan. 8, 2009, pet. ref'd) ...........................................................17

*Leday v. State,* 983 S.W.2d 713, 717 (Tex. Crim. App. 1998)................................31

*Lester v. State,* 120 S.W.3d 897, 901 (Tex. App.—Texarkana 2003, no pet.)............
............................................................................................ 14, 15, 21

*Mason v. State*, 416 S.W.3d 720, 733 (Tex. App.—Houston [14th Dist.] 2013 pet.
ref'd), *cert. denied,* 135 S. Ct. 1181, 191 L. Ed. 2d 139 (2015)..................... 14, 21

*Mayes v. State,* 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) ..................................31

*Nelson v. State*, 405 S.W.3d 113, 130 (Tex. App.—Houston [1st Dist.] 2013, pet.
ref'd)...................................................................................................30

*Orona v. State,* 341 S.W.3d 452, 464 (Tex. App.—Fort Worth 2011, pet. ref'd) ...14

*Rodriguez v. State*, 07-09-0145-CR, 2010 WL 4628580, at *4 (Tex. App.—
Amarillo Nov. 16, 2010, no pet.) ..................................................... 15, 21, 26, 27

*Smith v. State*, 236 S.W.3d 282, 300 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref'd) ...................................................................................................31

*Tome v. United States,* 513 U.S. 150, 156–58, 115 S.Ct. 696, 130 L.Ed.2d 574
(1995) ..................................................................................................28

*United States v. Amerson,* 185 F.3d 676, 691 (7th Cir.1999)................................21

*United States v. Casoni,* 950 F.2d 893, 904 (3d Cir.1991) ..................................... 28

*Walter v. State*, 267 S.W.3d 883, 891, fn. 26 (Tex. Crim. App. 2008) ......................
.............................................................. 10, 13, 14, 15, 16, 17, 19, 20, 21, 23, 24

*Williams v. State*, 14-11-01068-CR, 2013 WL 84903, at *2 (Tex. App.—Houston
[14th Dist.] 2013 pet. ref'd) ........................................................ 11, 12, 27, 28, 30

*Williamson v. United States*, 512 U.S. 594, 598, 114 S.Ct. 2431, 129 L.Ed.2d 476
(1994) ................................................................................................................. 16

*Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004).................................
............................................................................................. 11, 16, 19, 21, 22, 23

*Zuliani v. State,* 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). ........................ 11, 12

## RULES

TEX. R. APP. P. 33.1(a)........................................................................................ 32

TEX. R. APP. P. 44.2(b)........................................................................................ 30

TEX. R. EVID. 801(d). ........................................................................................ 12

TEX. R. EVID. 801(e)(1)(B). .......................................................................... 11, 27

TEX. R. EVID. 802.............................................................................................. 12

TEX. R. EVID. 803(24). .................................................................................. 12, 13

**TO THE HONORABLE COURT OF APPEALS:**

Now comes Jack Roady, Criminal District Attorney for Galveston County, Texas, and files this brief for the State of Texas.

## SUMMARY OF THE ARGUMENT

Ralph Garcia brings a single issue on appeal in order to reverse his murder conviction. Garcia submits that he was substantially harmed by the admission of the statement Garcia's girlfriend, Sarah Alvarez, made to Garcia's cousin, Officer Clemente Garcia. The Trial Court admitted the statement as a statement against penal interest. The record shows that the statement is admissible as both a statement against penal interest and as a prior consistent statement.

The Trial Court determined that the statement, considering all the circumstances, subjected Alvarez to criminal liability. The Trial Court heard corroborating circumstances in the evidence that indicated Alvarez was being truthful in her statement to Clemente. The record shows that defense counsel made an express or implied charge of recent fabrication and improper motive during Alvarez's examination. State offered the statement Alvarez made to Clemente because it was consistent with the testimony that Garcia attacked.

For all these reasons, the Trial Court did not err to admit Alvarez's statement to Clemente.

Maxie Flowers was murdered on October 13, 2011.[1] Ralph Garcia's girlfriend, Sarah Alvarez, testified that she had been with Garcia on the night that Flowers was killed.[2] Alvarez told the jury that she and Garcia returned to Garcia's house after dinner and a movie.[3] Around 2 a.m., they walked down the street to find some marijuana.[4] Garcia and Alvarez went to a two-story house at 55th and Ave L, the "weed house", owned by Christopher Taylor's family.[5] Ernest Wells, also known as Dirk, and Genie Boy, were standing on the upstairs porch.[6] Flowers was there, too.[7] Garcia and Alvarez asked if they had any marijuana.[8] Flowers remarked to Garcia how pretty Alvarez was.[9] Garcia just stared at Flowers and didn't say anything in return.[10] Garcia and Alvarez didn't find any marijuana so they left and walked back home.[11]

Flowers also went down the street to Garcia's house.[12] Flowers stood with his bike on Garcia's property and wouldn't leave.[13] Alvarez testified that Garcia

---

[1] R.R.V:21, 28.
[2] R.R.V:156-157.
[3] R.R.V:156-157.
[4] R.R.V:18.
[5] R.R.V:18, 158-159.
[6] R.R.V:18, 158-159.
[7] R.R.V:18, 158-159.
[8] R.R.V:160.
[9] R.R.V:18, 159.
[10] R.R.V:159.
[11] R.R.V:18.
[12] R.R.V:18.

was angry that Flowers said Alvarez was pretty and because Flowers was at Garcia's house.[14]

Alvarez testified that she and Garcia went back in the house.[15] They went into Garcia's room.[16] Alvarez testified that she saw Garcia get a shotgun from underneath his bed.[17] Garcia told Alvarez that God put him on this Earth to do his dirty work.[18]

Alvarez stated that she and Garcia got into Alvarez's mother's truck and Garcia drove down the street to where Flowers was riding his bike.[19] Alvarez testified that Garcia stopped the truck, took the shotgun from his lap, pointed it out the window and shot Flowers twice before they took off and headed back to Garcia's house.[20]

The shotgun made a loud blasting noise and woke up the resident in the house next to where Flowers lay dying on the side of the street at 54th and Ave L.[21] The resident called 911.[22]

Dirk, Genie Boy, and Christopher Taylor were still standing on the

---

[13] R.R.V:18, 158-159.
[14] R.R.V:157-158.
[15] R.R.V:18.
[16] R.R.V:163.
[17] R.R.V:156-157.
[18] R.R.V:159.
[19] R.R.V:157-158, 188.
[20] R.R.V:188-190.
[21] R.R.VII:171-172.
[22] R.R.VII:171-172.

upstairs porch, which was about a half a block away from where Flowers was murdered.[23] When they heard the gunshots, they left in their car.[24]

Flowers was still alive when the first responders arrived.[25] He was taken to the hospital where he died of multiple gunshot wounds.[26]

The Police found a bicycle belonging to Flowers in the road.[27] The Police also found two 12-gauge shotgun shells and two shotgun wads in the road.[28]

Flowers was known as a low level member of the Crips gang.[29] The investigation revealed that Flowers had been involved in at least one fight with the rival gang, the Bloods, the day before he was murdered.[30] However, Detective Gomez, the lead investigator, testified that he ruled out the rival gang member suspects.[31]

Detective Gomez testified that after he spoke to Dirk, his investigation was focused on 55th street, the scene of the murder.[32] Dirk knew the Garcia family because he worked for them from time to time and spent Thanksgivings

---

[23] R.R.VI:32, 35, 144-145; State's Exhibit 1 and State's Exhibit 5.
[24] R.R.V:191.
[25] R.R.VI:18, 221.
[26] R.R.VI:18, 221.
[27] R.R.V:91.
[28] R.R.V:92; 166.
[29] R.R.VI:18.
[30] R.R.VI:22.
[31] R.R.VI:24.
[32] R.R.VI:32.

with them.[33] Although Dirk was a reluctant witness at trial, he admitted that he was at the weed house on the night of the murder and that he saw Flowers riding his bicycle.[34]

Detective Gomez testified that he executed a search warrant on Garcia's residence just a few months after the murder.[35] The search uncovered shotgun shells of the same caliber as those found at the scene.[36] No gun was found.[37] No vehicle was found.[38] Garcia was interviewed but he denied any involvement in the murder.[39]

Detective Gomez testified that after he learned Alvarez was with Garcia on the night of the murder, he contacted her.[40] Initially, Alvarez told Garcia that she didn't know anything about the murder.[41] Although Gomez attempted to contact Alvarez again, she was unresponsive until she gave a recorded statement at the police station on March 22, 2012.[42] Gomez told the jury that he believed Alvarez's March 22nd statement was false.[43]

Clemente Garcia, a Galveston Police Officer, and Garcia's cousin, knew

---

[33] R.R.V:223-225; VIII:61-62.
[34] R.R.V:223-231.
[35] R.R.VI:98.
[36] R.R.VI:99.
[37] R.R.VI:152.
[38] R.R.VI:113.
[39] R.R.VI:38.
[40] R.R.VI:48-49.
[41] R.R.VI:48-49.
[42] R.R.VI:51-52.
[43] R.R.VI:51-52.

Garcia and Alvarez personally.[44] Clemente testified that he saw Alvarez on September 2, 2012, while he was on duty and that she appeared to be upset.[45] He also told the Trial Court that she appeared to be under the influence of alcohol or drugs, and that she did not appear to have the normal use of her physical and mental faculties.[46] Alvarez testified that she had been drinking.[47] Clemente told the jury that even though Alvarez had an outstanding arrest warrant for public intoxication, he was taking her home to her mother's house.[48]

Clemente testified that he asked Alvarez what was wrong and if she was involved in something.[49] Clemente testified that Alvarez told him that she couldn't take it anymore.[50] Clemente asked her what she meant.[51] Alvarez responded by saying "I am the key to the whole thing because I was there with Ralphie. I could… I could be charged with murder, too."[52] Alvarez testified that when she tried to tell Clemente about the murder, he told her she was being recording so she tried to run.[53] After Clemente called dispatch for help, Alvarez

---

[44] RR.VVII:131-132.
[45] RR.VVII:126.
[46] RR.VVII:118-19.
[47] R.R.V:168-169.
[48] R.R.VII:112-113.
[49] R.R.VII:112-113.
[50] R.R.VII:112-113.
[51] R.R.VII:112-113.
[52] *See* State's Exhibit 50.
[53] R.R.V:169.

was found and arrested on a public intoxication warrant.[54]

While Alvarez was still in jail on a public intoxication warrant, she gave another statement to Investigator Gomez.[55] Detective Gomez testified that Alvarez's second statement matched the other details from his investigation.[56]

When Alvarez testified at trial, she admitted to the jury that her statements to the police contradicted each other.[57] Initially upon direct and cross-examinations, Alvarez testified that she did not remember what happened on the day of the murder, she was under the influence that night, and that everything was a blur.[58] Alvarez told the jury that she didn't want to testify.[59] Alvarez explained that she was in a county jump suit because the sheriff arrested her in order for her to comply with her trial subpoena to testify.[60]

After Alvarez was allowed to review her video statements, she told the jury that her first statement wasn't true and that her second statement was true.[61]

Alvarez also testified that she and Garcia broke up after the murder around Thanksgiving of 2011.[62] Alvarez told the jury that her relationship with

---

[54] R.R.VI:54.
[55] R.R.VI:54.
[56] R.R.VI:54.
[57] R.R.V:156-157.
[58] R.R.V:5-6.
[59] R.R.V:199.
[60] R.R.V:6.
[61] R.R.V:156-157.
[62] R.R.V:175.

Garcia was abusive and that everybody knew how he beat her.[63] Alvarez testified that a few weeks before trial, Garcia started texting her again.[64] Alvarez messaged Garcia in return.[65] Alvarez testified that the messages were friendly and some of them sexual in nature.[66] Alvarez testified that fear played a part of communicating with Garcia.[67] Alvarez told the jury that, although Garcia didn't outright ask her, she didn't know what would happen if she didn't keep her mouth shut.[68]

Detective Gomez arrested Garcia for the murder of Flowers in September 2012.[69] The jury found Garcia guilty of murder as charged in the indictment.[70] Garcia was sentenced to 28 years' imprisonment in the Texas Department of Criminal Justice.[71] This appeal followed.

---

[63] R.R.V:200-201.
[64] R.R.V:200-201.
[65] R.R.V:200-201.
[66] R.R.V:200-201.
[67] R.R.V:200-201.
[68] R.R.V:200-201.
[69] C.R. 39-40.
[70] C.R. 185-189.
[71] C.R. 185-189.

Whether an out-of-court statement is admissible as non-hearsay or as an exception to hearsay is within the trial court's discretion. A trial court's ruling will be upheld if it's reasonably supported by the record and is correct under any theory of law.

How's the Trial Court's ruling to admit the statement wrong when the record supports admitting it as both as a hearsay exception admission against interest and as a nonhearsay prior consistent statement?

## ARGUMENT AND AUTHORITIES

Garcia's sole issue contends that the Trial Court erred when it admitted a statement of Garcia's girlfriend, Sarah Alvarez, as an admission against interest. Alvarez told Garcia's cousin, Officer Clemente Garcia, "I am the key to the whole thing because I was there with Ralphie. I could… I could be charged with murder, too."[72] The Trial Court's decision to admit this evidence wasn't an abuse of discretion because Alvarez believed that her role in the murder was important enough that she could be charged with murder.[73] In addition, Alvarez's statement was a blame-sharing statement and not a blame-shifting statement.[74] Where circumstances do not indicate motives to shift blame or curry

---

[72] State's Exhibit 50 (Clemente Garcia's patrol car video/audio).

[73] *See Walter v. State*, 267 S.W.3d 883, 891, fn. 26 (Tex. Crim. App. 2008) (When the statement against interest was offered, it became the job of the trial court to determine whether the declarant was under the impression that the statement was against her interest at the time she made it.).

[74] *See Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004) (finding statement

9

favor, the statement is admissible.[75]

Moreover, the statement is admissible as a prior consistent statement.[76] Alvarez testified and was cross-examined at trial; there was an accusation of recent fabrication and improper motive; the State offered the statement to rebut the challenged testimony; and the statement was made before Alvarez appeared to have motive to lie.[77] For all these reasons, the Trial Court did not err to admit Alvarez's statement to Clemente.[78]

### *Standard of review and applicable law*

Whether an out-of-court statement is admissible under an exception to the general hearsay exclusion rule is a matter within the trial court's discretion.[79] A trial court's decision to admit or exclude evidence of a statement against penal interest is reviewed for an abuse of discretion.[80] Similarly, a trial court's determination that a prior consistent statement is admissible is reviewed for an abuse of discretion.[81]

The appellate court only determines whether the record supports the trial

---

trustworthy where declarant made it to friends without any motive to shift blame or minimize involvement).

[75] *Id.*

[76] *See* TEX. R. EVID. 801(e)(1)(B).

[77] *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007); *Williams v. State*, 14-11-01068-CR, 2013 WL 84903, at *2 (Tex. App.—Houston [14th Dist.] 2013 pet. ref'd).

[78] *See Woods*, 152 S.W.3d at 113.

[79] *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

[80] *Cunningham v. State,* 877 S.W.2d 310, 313 (Tex. Crim. App. 1994) (en banc).

[81] *Hammons*, 239 S.W.3d at 806; *Williams*, 14-11-01068-CR, 2013 WL 84903, at *2.

court's ruling.[82] The appellate court only reverses when "the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree."[83] The appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.[84]

*Hearsay*

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted.[85] For hearsay to be admissible, it must fit into an exception provided by statute or the Rules of Evidence.[86] One exception to hearsay is a statement against interest.[87] A statement against interest is a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace; and
>
> (B) is supported by corroborating circumstances

---

[82] *Coffin v. State,* 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).
[83] *Zuliani,* 97 S.W.3d at 595 (quoting *Cantu v. State,* 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).
[84] *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).
[85] TEX. R. EVID. 801(d).
[86] TEX. R. EVID. 802.
[87] TEX. R. EVID. 803(24).

that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.[88]

### *The Trial Court found the statement was against Alvarez's penal interest after hearing the State's evidence*

Garcia argues this evidence wasn't admissible as a statement against interest under Texas Rule of Evidence 803(24). Here, it is important to note that the statement was admitted during the final witness of the State; therefore, the Trial Court had heard most, if not all, of the State's evidence. Trial Court had already heard evidence of relevant corroborating circumstances that supported its ruling.

As stated above, a statement against interest in the criminal context is an exception to the hearsay rule that tends to subject the declarant to criminal liability.[89] The rule sets out a two-step foundation requirement for admissibility.[90] First, the trial court must determine whether the statement, considering all the circumstances, subjects the declarant to criminal liability and whether the declarant realized this when he made the statement.[91] Second, the court must determine whether there are sufficient corroborating circumstances

---

[88] *Id.*
[89] TEX. R. EVID. 803(24); *see also Walter,* 267 S.W.3d at 890.
[90] *Walter,* 267 S.W.3d at 890.
[91] *Id.* at 890–91.

that clearly indicate the trustworthiness of the statement.[92] Both statements that are directly against the declarant's interest and collateral "blame-sharing" statements may be admissible under rule 803(24) if corroborating circumstances clearly indicate their trustworthiness.[93]

Whether corroborating circumstances clearly indicate trustworthiness lies within the sound discretion of the trial court. Appellate courts will conduct this review by examining pertinent factors, favorable and unfavorable, which are relevant to corroborating circumstances.[94]

The appellate court may consider positive and negative indicia of trustworthiness in reviewing a trial court's decision to admit or exclude a hearsay statement against penal interest.[95] However, the appellate court must be "careful not to engage in a weighing of the credibility of the in-court witness."[96] "The overriding consideration is that the requirement of corroboration should be utilized and construed in such a manner as to effectuate its purpose of

---

[92] *Id.* at 891.

[93] *Id.* at 896; *see also Orona v. State,* 341 S.W.3d 452, 464 (Tex. App.—Fort Worth 2011, pet. ref'd); *see also Mason v. State*, 416 S.W.3d 720, 733 (Tex. App.—Houston [14th Dist.] 2013 pet. ref'd), *cert. denied,* 135 S. Ct. 1181, 191 L. Ed. 2d 139 (2015).

[94] *Cunningham*, 877 S.W.2d at 310.

[95] *Davis v. State,* 872 S.W.2d 743, 748–49 (Tex. Crim. App. 1994); s*ee also Lester v. State,* 120 S.W.3d 897, 901 (Tex. App.—Texarkana 2003, no pet.).

[96] *Davis,* 872 S.W.2d at 749; s*ee also Lester,* 120 S.W.3d at 901; *Rodriguez v. State*, 07-09-0145-CR, 2010 WL 4628580, at *4 (Tex. App.—Amarillo Nov. 16, 2010, no pet.) (not designated for publication).

circumventing fabrication."[97]

### *People don't usually incriminate themselves unless it's true*

The Trial Court determined that the statement, considering all the circumstances, subjected Alvarez to criminal liability.[98] Garcia claims that Alvarez's statement was not self-inculpatory.[99] The Trial Court found the statement inculpating because Alvarez indirectly claimed that she was involved in the murder.[100]

A reasonable person would not normally claim that he committed a crime, unless it was true.[101] The exception for statements against pecuniary, penal, or social interest stems from the commonsense notion that people ordinarily do not say things that are damaging to themselves unless they believe they are true.[102] This is the guiding principle behind the Texas hearsay exception for statements against penal interest found in Rule 803(24).[103]

Statements against penal interest fall into three general categories: Some

---

[97] *Cunningham*, 877 S.W.2d at 312; *Eby v. State*, 165 S.W.3d 723, 735 (Tex. App.—San Antonio 2005, pet. ref'd).

[98] *See Walter,* 267 S.W.3d at 890–91; *see also* R.R.V:120-121.

[99] Garcia brief, p. 10.

[100] *See* State's Exhibit 50: "I could be charged with murder, too."

[101] *Bingham v. State*, 987 S.W.2d 54, 56 (Tex. Crim. App. 1999).

[102] *See Williamson v. United States,* 512 U.S. 594, 598, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (discussing the federal counterpart to the Texas exception for statements against penal interest and noting that "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true.").

[103] *Bingham*, 987 S.W.2d at 56.

inculpate only the declarant; others inculpate equally both the declarant and a third party, such as a co-defendant; still others inculpate both the declarant and third party, but also shift blame by minimizing the speaker's culpability.[104] A confession, conversation or narrative, even a short one, might mix together all three types of statements.[105] Where circumstances do not indicate motives to shift blame or curry favor, the statement may be admissible.[106]

Here, the statement equally inculpated Alvarez and Garcia. Garcia had not been charged or arrested at the time Alvarez made the statement to Clemente. Although indirectly, Alvarez's statement indicated that she and Garcia were together and could be charged with murder. Alvarez didn't try to shift the blame onto Garcia; instead, it could be interpreted that she made herself the decisive factor in the murder.

Garcia argues that Alvarez's statement amounts to no more than mere presence which, alone, is not enough to criminally inculpate someone.[107] Alvarez's statement included more than mere presence. To the contrary, Alvarez implies she could've been a participant.[108] She said, "I could get charged with

---

[104] *Walter*, 267 S.W.3d at 897-99.
[105] *Id.*
[106] *Woods*, 152 S.W.3d at 113.
[107] Garcia's Brief, p. 10-11.
[108] *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987) (Mere presence alone at the scene of the offense will not support a conviction; however, it is a circumstance which, combined with other facts, may show that the defendant was a participant.); *see also Foxx v.*

murder, too."[109] Her actions show that she believed what she said. She testified that when she knew she was being recorded, she ran.[110]

***Alvarez made the blame-sharing statement to Garcia's cousin spontaneously without motive to gain favor***

The night Alvarez made the statement to Clemente, Clemente was on duty and responded to a disturbance about a couple arguing in a parking lot.[111] Alvarez testified she'd been arguing with a male friend while drinking that night, but that Clemente was there on a different call.[112] Clemente testified that when he saw Alvarez she was upset and crying.[113] Alvarez testified that she had been drinking.[114] Clemente testified that although Alvarez had an outstanding arrest warrant for public intoxication, he told the other officers that he knew Alvarez and that he was going to take her home to her mother's house.[115]

---

*State*, 1497-00169-CR, 1999 WL 966651, at *1 (Tex. App.—Houston [14th Dist.] Oct. 21, 1999, pet. ref'd) (not designated for publication).

[109] State's Exhibit 50; *see Juarez v. State*, 01-08-00010-CR, 2009 WL 41648, at *3-4 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, pet. ref'd) (not designated for publication) (Appellant's question to the declarant, in which he asked "how [she] would feel towards him if the police said that he had killed the two ladies," satisfies the first inquiry under rule 803(24). Though hypothetical, the question was self-inculpatory and against appellant's self-interest.)

[110] *See Walter*, 267 S.W.3d at 891, fn. 26 ("Whenever a statement against interest is offered, it is the job of the Trial Judge to determine whether the declarant was under the impression that the statement was against his interest at the time he made it.").

[111] R.R.VII:112-113.

[112] R.R.V:168-169.

[113] R.R.VII:112-113.

[114] R.R.V:168-169.

[115] R.R.VII:112-113.

Clemente testified that he asked Alvarez what was wrong and if she was okay.[116] Clemente testified that he asked Alvarez if she was involved in something.[117] Clemente testified that Alvarez told him that she couldn't take it anymore.[118] Clemente asked her what she meant.[119] Alvarez responded by saying that she was the key to the whole thing.[120] She was there with Ralph Garcia.[121] She could get charged with murder, too.[122]

At trial, Alvarez testified that she tried to tell Clemente about the murder that night so he could help Garcia but when Clemente said his in-car video was recording, she tried to run.[123] Clemente testified that after Alvarez ran from his vehicle, he called for backup because he didn't know if she was going to be in any danger.[124]

The record shows that Alvarez's statement to Clemente was inculpatory considering Alvarez implied she was involved in the murder, placed herself at the scene of the murder, and when she found out her statement was being recorded, she ran.[125]

---

[116] R.R.VII:112-113.
[117] R.R.VII:112-113.
[118] R.R.VII:112-113.
[119] R.R.VII:112-113.
[120] *See* State's Exhibit 50.
[121] *See* State's Exhibit 50.
[122] *See* State's Exhibit 50.
[123] R.R.V:169.
[124] R.R.VII:127-128.
[125] *See Walter*, 267 S.W.3d at 890.

Alvarez's flight from the police car suggests that Alvarez wasn't attempting to gain or curry favor by trying to implicate Garcia.[126] To the contrary, her flight, coupled with her statement, shows that Alvarez reasonably believed that she could be charged with the murder. Alvarez's statement was an equal blame-sharing statement. Alvarez's statement didn't try to shift blame by minimizing her culpability or try to implicate Garcia to a greater degree.[127]

It must be kept in mind that the basis of the statement against penal interest exception is not that a declarant is in a general "trustworthy" frame of mind.[128] The probability of trustworthiness comes only from the statement being self-inculpatory.[129] The out-of-court statements from a co-defendant that are against the declarant's penal interest, but also inculpate the defendant, are viewed with some suspicion.[130] That suspicion is lessened when the speaker makes no distinction between his conduct and that of the defendant—where there is absolute equality.[131] Although Alvarez was not charged as a co-defendant, these principles support the trial court ruling because Alvarez's statement was an equal blame-sharing statement.

---

[126] *Woods*, 152 S.W.3d at 113.
[127] *See Woods*, 152 S.W.3d at 113; *see also Walter*, 267 S.W.3d at 897-99.
[128] *Walter*, 267 S.W.3d at 897-99.
[129] *Id.*
[130] *Id.*
[131] *Id.*

***The Trial Court heard corroborating circumstances in the evidence that indicated Alvarez was being truthful in her statement to Clemente***

The Trial Court impliedly determined that there were sufficient corroborating circumstances that clearly indicated the trustworthiness of the statement.[132] The determination of whether corroborating circumstances clearly indicate trustworthiness lies within the trial court's sound discretion.[133]

> The corroborating circumstances must be sufficiently convincing to clearly indicate the trustworthiness of the statement. The focus of this inquiry is on verifying to the greatest extent possible the trustworthiness of the statement so as to avoid the admissibility of a fabrication.[134]

> The structure of the rule and its wording demonstrate the obvious suspicion with which the drafters of the rule regarded a statement exposing the declarant to criminal liability, but exculpating the accused. The requirement of corroboration is therefore construed in such a manner as to effectuate its purpose of circumventing fabrication.[135]

While there is no definitive test to determine whether sufficient corroborating circumstances exist, when analyzing the sufficiency of corroborating circumstances, a number of factors are relevant: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant; (2) whether

---

[132] *Walter*, 267 S.W.3d at 891.
[133] *Cunningham*, 877 S.W.2d at 313.
[134] *Davis*, 872 S.W.2d at 748–49 (internal quotations omitted).
[135] *Walter*, 267 S.W.3d at 891; *Lester*, 120 S.W.3d at 901; *see generally United States v. Amerson,* 185 F.3d 676, 691 (7th Cir.1999) (Posner, C.J., dissenting) (discussing rationale for requiring corroboration).

the declarant was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the statement was made; and (6) the existence of independent corroborative facts.[136] The trial court may consider evidence which undermines the reliability of the statement as well as evidence corroborating its trustworthiness.[137] The first two factors logically applies only when the defendant is the proponent of the statement against interest that tends to exculpate the defendant.[138]

Here, several factors support a clear indication of trustworthiness. To begin, Alvarez's statement to Clemente was made while the investigation was still pending nearly 11 months after the murder. Alvarez's statement was spontaneous and not the result of a custodial interview. The statement was made to a familiar person that she believed she could confide it.

Alvarez made the statement to Garcia's cousin, Clemente Garcia.[139] Clemente, although also law enforcement, was someone she'd known personally through her relationship with Garcia.[140] Clemente testified that he treated Garcia

---

[136] *Woods,* 152 S.W.3d at 113; *Davis*, 872 S.W.2d at 749; *Rodriguez*, 07-09-0145-CR, 2010 WL 4628580, at *3.

[137] *Cunningham*, 877 S.W.2d at 312; *see also Bingham*, 987 S.W.2d at 58; *Mason*, 416 S.W.3d at 733-34.

[138] *Woods*, 152 S.W.3d at 113.

[139] R.R.VII:108.

[140] R.R.VII:131-132.

like a son.[141] Clemente testified that he'd come to know Alvarez through Garcia while the two were dating.[142] Clemente testified that he was somewhat close to Alvarez, that they would talk, and Alvarez came to him for advice.[143] Alvarez called Clemente by his first name.[144] In addition, Clemente testified that he wasn't involved in the murder investigation and that he hadn't spoken to either Alvarez or Garcia about it.[145]

Alvarez likely didn't believe she was making a statement law enforcement but confiding in someone that was close to the family. Therefore, she did not have a motive to shift blame to Garcia.[146] Statements to friends, loved ones, or family members normally do not raise the same trustworthiness concerns as those made to investigating officers because there the declarant has an obvious motive to minimize his own role in a crime and shift the blame to others.[147]

Alvarez testified about seeing Clemente that night,

> And him being Ralph's -- you know, Ralph looking up to him and him looking up to Ralph at the same time, I thought that -- you know what I'm saying -- "Man, he needs to help this kid," you know? Like, that was the only person close to him that could really get to him.

---

[141] R.R.VII:112-113.
[142] R.R.VII:112-113.
[143] R.R.VII:111.
[144] R.R.VII:112-113.
[145] R.R.VII:112-113.
[146] *See Walter*, 267 S.W.3d at 897-99.
[147] *Id.*

21

Q. Right. Did you tell Officer Garcia what happened?

A. I tried to, kind of sort of. Then he said they were recording. That's when I tried to run.[148]

Because Alvarez was not being arrested, but escorted home, she did not have a motive to curry favor.[149] Clemente testimony established that Alvarez made the statement spontaneously to him. The fact that this was a "street corner" spontaneous conversation with Garcia's uncle distinguishes this statement from custodial statements to the police.[150] Thus, the timing, spontaneity, and relationship between the Alvarez and Clemente (the party to whom the statement was made) tend to establish the reliability of the statement.[151]

***Circumstantial evidence corroborated Alvarez's custodial statements to the police, Alvarez's testimony, and Garcia's guilt***

Alvarez testified that she and Garcia went down the street to a two-story house to find some marijuana.[152] Alvarez testified that Ernest Wells, also known as Dirk, and Genie Boy, were standing on the upstairs porch.[153] Alvarez's testimony was corroborated when Taylor testified that Dirk and Genie Boy were

---

[148] R.R.V:169.
[149] R.R.V:169; *see also Woods*, 152 S.W.3d at 113.
[150] *See Walter*, 267 S.W.3d at 897-99.
[151] *Chaney v. State*, 01-08-00204-CR, 2009 WL 1086952, at *3 (Tex. App.—Houston [1st Dist.] Apr. 23, 2009, no pet.) (not designated for publication).
[152] R.R.V:18.
[153] R.R.V:18, 158-159.

with him at the house the night of the murder.[154] Dirk testified to that he knew Chris Taylor and Genie Boy.[155] Dirk testified that he was at the weed house that night with Genie Boy.[156]

Alvarez testified that she had been with Garcia on the night that Flowers was killed.[157] Alvarez told the jury that she and Garcia returned to Garcia's house after dinner and a movie.[158] Further, Alvarez said she spent the night there after the murder.[159] Alvarez's testimony was corroborated when Garcia's mother testified to the jury that Alvarez stayed at their house a lot.[160] Garcia's mother did not provide an alibi for him for the night of the murder; instead, she told the jury that Garcia could have left with Alvarez.[161]

Alvarez testified that Garcia shot Flowers twice before they took off in the truck and headed back to Garcia's house.[162] Alvarez's testimony was corroborated when the detectives testified that there were 2 shotgun shells found at the scene that were consistent with the shotgun shells found in Garcia's

---

[154] R.R.V:208.
[155] R.R.V:221.
[156] R.R.V:222.
[157] R.R.V:156-157.
[158] R.R.V:156-157.
[159] R.R.V:188-190.
[160] R.R.VIII:48.
[161] R.R.VIII:59.
[162] R.R.V:188-190.

bedroom.[163] The medical examiner testified that the wounds on the body were consistent with the shotgun blasts coming from the driver's side window of a vehicle.[164] Christopher Taylor and a neighbor testified that they heard gun shots and vehicle travel down the street after the gun shots.[165] Garcia lived on the same street where Flowers was found murdered.[166]

Alvarez testified that Flowers was riding his bike.[167] Alvarez testified that Flowers came to Garcia's house on his bike.[168] Alvarez's testimony was corroborated when Dirk testified that he saw Flowers ride his bike down the street.[169] The detectives testified that Flowers's body was found near his bicycle.[170]

Considering the relevant factors, it appears the corroborating evidence, even in light of evidence tending to undermine the trustworthiness of Alvarez's statements, is sufficiently convincing to indicate trustworthiness.[171] Here, the Trial Court was aware of the applicable rule of evidence, and of the relevant standards for admitting and excluding a hearsay statement against penal

---

[163] R.R.V:91; VI: 42, 96.
[164] R.R.VI:216-217.
[165] R.R.V:208-209; R.R.VIII:23-24.
[166] R.R.VI:33; V:37, 86,
[167] R.R.V:157-158, 188.
[168] R.R.V:18, 158-159.
[169] R.R.V:223.
[170] R.R.V:91.
[171] *See Eby*, 165 S.W.3d at 737.

interest. The Trial Court did not abused its discretion. The corroborating circumstances surrounding Alvarez's statement to Garcia's uncle clearly indicated the trustworthiness of the statement.[172] Therefore, the Trial Court properly admitted the statement because its determination that Alvarez's statement qualified as a Rule 803(24) statement against interest was within the zone of reasonable disagreement.[173]

### *The Trial Court could've admitted the statement as a nonhearsay prior consistent statement*

During Alvarez's testimony there was an express or implied charge of recent fabrication and improper motive.[174] The State offered the statement to after Garcia implied Alvarez was lying.[175] The statement was made before Alvarez had a motive to lie.[176]

Rule 801(e)(1)(B) permits the substantive, non-hearsay admission of prior consistent statements of a witness "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."[177] Four requirements must be met for prior consistent statements to be admissible: (1) the declarant must testify at trial and be subject to cross-examination, (2)

---

[172] *See Rodriguez*, 07-09-0145-CR, 2010 WL 4628580, at *5.

[173] *See id.*

[174] *Hammons*, 239 S.W.3d at 806; *Williams*, 14-11-01068-CR, 2013 WL 84903, at *2.

[175] *Hammons*, 239 S.W.3d at 806; *Williams*, 14-11-01068-CR, 2013 WL 84903, at *2.

[176] *Hammons*, 239 S.W.3d at 806; *Williams*, 14-11-01068-CR, 2013 WL 84903, at *2.

[177] *Hammons,* 239 S.W.3d at 804 (quoting Tex. R. Evid. 801(e)(1)(B)).

there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent, (3) the proponent must offer a prior statement consistent with the declarant's challenged in-court testimony, and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.[178]

The Court of Criminal Appeals has emphasized that rule 801(e)(1)(B) "sets forth a minimal foundation requirement of an implied or express charge of fabrication or improper motive."[179] "'[T]here need only be a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial.'"[180] The trial court therefore possesses "substantial discretion to admit prior consistent statements under the rule."[181]

> There is no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication, but the trial court should determine whether the cross-examiner's questions or the tenor of that questioning would reasonably imply an intent by the witness to fabricate.[182]

The defense opens the door to the admissibility of a prior consistent statement by an express or implied suggestion that the witness is fabricating her

---

[178] *Id.* (citing *Tome v. United States,* 513 U.S. 150, 156–58, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995)).
[179] *Id.*
[180] *Id.* (quoting *United States v. Casoni,* 950 F.2d 893, 904 (3d Cir.1991)).
[181] *Id.* at 804–05.
[182] *Id.* at 805; *Williams*, 14-11-01068-CR, 2013 WL 84903, at *2.

testimony in some relevant respect.[183] In deciding that question, the trial court must consider the totality of the cross-examination, not isolated portions or selected questions and answers.[184]

Here, the four requirements are met. First, Alvarez testified and was cross-examined. Second, during cross examination, Garcia implied that Alvarez lied when she described the murder. Garcia expressly accused Alvarez of not being credible because she was a jealous, scorned, drug-addicted, suicidal ex-girlfriend.[185] Third, the State offered the statement Alvarez made to Clemente because it was consistent with the testimony that Garcia attacked.

Fourth, according to Garcia, Alvarez had a motive to lie or for revenge since she stop dating Garcia. But the record shows that in her March 2012 statement to Gomez, months after her relationship with Garcia ended, she refused to implicate him in the murder. When she spoke to Clemente in September 2012, she implicated herself in addition to Garcia. Afterwards, she made an addition statement to police where she stated Garcia shot Flowers. If Alvarez's motive was revenge all along she would've blamed Garcia for the murder the first time she spoke to Detective Gomez or, at the very least, when she talked to Clemente in the patrol car. But she didn't.

---

[183] *Hammons,* 239 S.W.3d at 804.
[184] *Id.*
[185] R.R.V:50, 57-58, 174-75.

27

Reviewing the record from the totality of the examinations, and giving due deference to its assessment of tone, tenor, and demeanor, the Trial Court reasonably could have found that defense counsel's cross-examination suggested that Alvarez's testimony that Garcia was the murderer was a recent fabrication—made during the trial—in light of her allegedly conflicting custodial statements.[186]

### Admitting the statement was harmless

Even if this Court were to assume that Alvarez's statement to Clemente constituted inadmissable hearsay, the admission of the statement was harmless because the same or similar evidence was admitted at another point in the trial without objection.[187] The admission of inadmissible hearsay is nonconstitutional error and will be considered harmless if, after examining the record as a whole, the error did not affect appellant's substantial rights—*i.e.,* did not have a substantial and injurious effect or influence in determining the jury's verdict.[188] Moreover, the improper admission of evidence is harmless if the same or similar

---

[186] *See Hammons*, 239 S.W.3d at 808–09; *Williams*, 14-11-01068-CR, 2013 WL 84903, at *6.

[187] *See* TEX. R. APP. P. 44.2(b); *see also Nelson v. State*, 405 S.W.3d 113, 130 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

[188] *Garcia v. State,* 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App.1998); *Campos v. State,* 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Coleman v. State*, 428 S.W.3d 151, 162 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

evidence is admitted without objection at another point in the trial.[189]

Alvarez testified as the first State's witness and then again after she reviewed her previous statements. Alvarez's statement to Clemente came into evidence during one of the last State witnesses. The statement didn't tell the jurors anything they hadn't already heard from Alvarez's testimony.

The statement Alvarez made to Clemente said that she was the key to the murder, she was there with Garcia, and she could be charged for murder, too. The jury already heard Alvarez testify that she was with Garcia on the night of murder. The jury already heard Alvarez say that she was in the truck with Garcia when he shot Flowers. Alvarez testified that the reason Garcia was upset was because Flowers commented on how pretty Alvarez was and then came down the street to Garcia's house. The jury already heard Alvarez testify about her personal feelings toward the murder, how it really upset her, and how she was reluctant to come forward as a witness. There was nothing in that statement that the jury hadn't already heard in the testimony.

Garcia claims he was harmed by the admission of the statement and the

---

[189] *See Leday v. State,* 983 S.W.2d 713, 717 (Tex. Crim. App. 1998); *see also Mayes v. State,* 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *see also Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *see also Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.— Houston [14th Dist.] 2004, pet. ref'd); *see also Smith v. State*, 236 S.W.3d 282, 300 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

State's use of the statement during closing arguments.[190] Garcia argues that the statement was used to bolster the credibility of Alvarez. However, Garcia's bolstering argument should not be considered as it was not preserved because he did not object on that basis.[191] Additionally, if Garcia was concerned that the statement affected Alvarez's credibility in front of the jury, Garcia could have called Alvarez as a rebuttal witness to attempt to impeach her about her statements to Officer Clemente.[192]

Nonetheless, admitting Alvarez's statement to Clemente into evidence was cumulative and did not tell the jury anything that wasn't already in evidence; therefore, the statement didn't have a substantial or injurious effect on the verdict.

After examining the record, this Court may be reasonably assured that any possible improper admission of Alvarez's statement to Clemente did not influence the jury verdict, or only had but a slight effect, because the same or similar evidence was admitted without objection elsewhere at trial.[193]

Garcia's sole issue should be overruled and the Trial Court's ruling upheld.

---

[190] Garcia brief, p. 15-16.
[191] *See* TEX. R. APP. P. 33.1(a); *see also Jones v. State*, 13-00-087-CR, 2001 WL 1000994, at *2 (Tex. App.—Corpus Christi Mar. 29, 2001, no pet.) (not designated for publication).
[192] R.R.VII:124-125
[193] *See Chapman*, 150 S.W.3d at 814.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that the judgment of the Trial Court be affirmed in all respects.

Respectfully submitted,

JACK ROADY
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS


*/s/ Allison Lindblade*

ALLISON LINDBLADE
Assistant Criminal District Attorney
State Bar Number 24062850
600 59th Street, Suite 1001
Galveston, Texas 77551
Tel (409)766-2452/Fax (409)765-3261
allison.lindblade@co.galveston.tx.us

## CERTIFICATE OF SERVICE

The undersigned Attorney for the State certifies a copy of the foregoing brief was sent via email, eFile service, or certified mail, return receipt requested, to Joseph Salhab, 2018 Buffalo Terrace, Houston, Texas 77019, josephsalhab@mindspring.com, on September 11, 2015.

/s/ *Allison Lindblade*

ALLISON LINDBLADE
Assistant Criminal District Attorney
Galveston County, Texas

## CERTIFICATE OF COMPLIANCE

The undersigned Attorney for the State certifies this brief complies with Tex. R. App. Proc. 9.4(i)(3), is a computer generated document, and consists of 6,492 words.

/s/ *Allison Lindblade*

ALLISON LINDBLADE
Assistant Criminal District Attorney
Galveston County, Texas